1  NICOLA T. HANNA
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   JOHN J. LULEJIAN (Cal. Bar No. 186783)
4  Assistant United States Attorney
        1200 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone: (213) 894-0721
        Facsimile: (213) 894-0141
7       E-mail:   John.Lulejian@usdoj.gov

8  Attorneys for Applicant
   UNITED STATES OF AMERICA

9



10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  REQUEST FROM THE PORTUGUESE        No. 19 CM 00108
    REPUBLIC FOR ASSISTANCE IN A
13  CRIMINAL MATTER                    _EX PARTE_ APPLICATION FOR ORDER
                                       APPOINTING COMMISSIONER; EXHIBIT
14

15

16        Applicant United States of America hereby applies to this Court

17  ex parte for an order, pursuant to the Instrument Between the United

18  States of America and the Portuguese Republic as contemplated by

19  Article 3(3) of the Agreement on Mutual Legal Assistance Between the

20  United States of America and the European Union signed 25 June 2003,

21  U.S.-Port., July 14, 2005, S. Treaty Doc. No. 109-13 (2006) (the

22  "Treaty"), as well as 18 U.S.C. § 3512, 28 U.S.C. § 1782, and the

23  principles of comity and reciprocity, and its own inherent power,

24  appointing Assistant United States Attorney John J. Lulejian as a

25  Commissioner of the Court for the purpose of obtaining evidence

26  sought by the Portuguese Republic ("Portugal").  This application is

27  made pursuant to a Request for Legal Assistance in a Criminal Matter

28

from Portugal and is based on the aforementioned treaty and the
attached Memorandum of Points and Authorities and Exhibit.

DATED: January 25, 2019                Respectfully submitted,

                                       NICOLA T. HANNA
                                       United States Attorney

                                       LAWRENCE S. MIDDLETON
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                       _/s/ John J. Lulejian_____
                                       JOHN J. LULEJIAN
                                       Assistant United States Attorney

                                       Attorneys for Applicant
                                       UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

PAGES

MEMORANDUM OF POINTS AND AUTHORITIES ............................. 1

I.   BACKGROUND ...................................................... 1

     A.   SUMMARY ................................................... 1

     B.   FACTS ..................................................... 1

     C.   ASSISTANCE REQUESTED ...................................... 3

II.  DISCUSSION ..................................................... 3

     A.   THE ORDER SOUGHT IS APPROPRIATE TO ENABLE THE UNITED
          STATES TO FULFILL ITS TREATY OBLIGATIONS ................. 3

          1.   The Treaty ......................................... 3

          2.   Statutory Authority ................................ 5

     B.   EXECUTION OF FOREIGN REQUESTS FOR ASSISTANCE UNDER THE
          TREATY AND SECTION 3512 ................................. 6

          1.   Authorization of the Application to this Court ...... 6

          2.   Foreign Authority Seeking Assistance Within
               Section 3512 and the Treaty ........................ 7

          3.   Authority of the Federal Courts Under Section
               3512 ............................................... 8

     C.   APPOINTMENT OF A PERSON AS COMMISSIONER TO COLLECT
          EVIDENCE ................................................. 9

          1.   Statutory Authorization ............................ 9

          2.   Procedures for Evidence Collection ................. 9

               a.   Procedures Authorized by Other Statutes ....... 10

               b.   Orders by the Person Appointed; Commissioner
                    Subpoenas ................................. 10

               c.   Notice of Evidence Taking ..................... 11

               d.   Right to Financial Privacy Act ............... 12

III. CONCLUSION ..................................................... 12

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

Asakura v. Seattle,
   265 U.S. 332 ............................................. 3-4

Barr v. U.S. Dep't of Justice,
   645 F. Supp. 235 (E.D.N.Y. 1986) ............................ 4

Barr v. U.S. Dep't of Justice,
   819 F.2d 25 (2d Cir. 1987) ............................... 4, 5

In re Comm'rs Subpoenas,
   325 F.3d 1287 (11th Cir. 2003) ................... 4, 10, 10-11

Letter of Request for Judicial Assistance etc.,
   669 F. Supp. 403 (S.D. Fla. 1987) .......................... 12

Letter of Request From Crown Prosecution Serv.,
   870 F.2d 686 (D.C. Cir. 1989) ........................... 10, 11

Letter of Request from Supreme Court,
   138 F.R.D. 27 (S.D.N.Y. 1991) .............................. 9

Letters of Request from Supreme Court,
   821 F. Supp. 204 (S.D.N.Y. 1993) ......................... 9, 12

Letters Rogatory from Tokyo Dist.,
   539 F.2d 1216 (9th Cir. 1976) ............................. 11

United States v. Daccarett,
   6 F.3d 37 (2d Cir. 1993) .................................. 12

United States v. Erato  (In re Erato),
   2 F.3d 11 (2d Cir. 1993) ................................. 4, 11

United States v. Glob. Fishing, Inc.  (In re Premises Located at 840
140th Ave. NE, Bellevue),
   634 F.3d 557 (9th Cir. 2011) ............................... 4

White v. NFL,
   41 F.3d 402 (8th Cir. 1994) ............................... 10

Young v. U.S. Dep't of Justice,
   882 F.2d 633 (2d Cir. 1989) ............................... 12

Zschernig v. Miller,
   389 U.S. 429 (1968) ....................................... 4

# TABLE OF AUTHORITIES (CONTINUED)

**FEDERAL STATUTES**

12 U.S.C. § 3401 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

18 U.S.C. § 2703 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6, 8

18 U.S.C. § 3123 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

18 U.S.C. § 3512 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

28 U.S.C. § 1782 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

28 U.S.C. § 3512 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

**FEDERAL RULES**

Fed. R. Crim. P. 41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Fed. R. Crim. P. 57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

#### A.   SUMMARY

Pursuant to the the Instrument Between the United States of America and the Portuguese Republic as contemplated by Article 3(3) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union signed 25 June 2003, U.S.-Port., July 14, 2005, S. Treaty Doc. No. 109-13 (2006) (the "Treaty"; copy of the Treaty and related documents attached hereto as Exhibit 1), as well as the principles of comity and reciprocity, the Government of the Portuguese Republic ("Portugal") has asked the United States for assistance in connection with a criminal prosecution underway in Portugal.  The Treaty provides that the United States "shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the Central Authority of Requesting State."  See Ex. 1, Treaty, Annex. Art. 7.  However, in this matter, Portugal has not sought confidentiality.

Applicant United States of America respectfully requests that Assistant United States Attorney John J. Lulejian be appointed a commissioner of the court to carry out portions of the Request applicable to this judicial district.[1]

#### B.   FACTS

The facts of the Request may be summarized as follows:

Portuguese authorities, including the Central Criminal Section of Portimão – Judge 3 – Judicial Court of the County of Faro, have

---

[1] A copy of the Request is not attached, because nationally, the government has ceased attaching letter of requests and mutual legal assistance requests to its filed Ex Parte Applications for Order Appointing Commissioner.

charged a number of individuals and entities for embezzlement, money laundering, corruption, and illicit business-related offenses.   The defendants alleged to be involved in this scheme include the following:

1.    LUÍS MANUEL DE CARVALHO CARITO ("CARITO");

2.    ARTUR MIGHEL TELES DE FIGUEIREDO CURADO ("CURADO");

3.    LUIS MIGUEL DE BRITO VARELA MARREIROS ("MARREIROS");

4.    CARLOS GUSATVO OLIVEIRA BRAGA BARROS ("BARROS");

5.    IDENTIK WORLD, SA (represented by CURADO);

6.    PRODPICTURE, PORTUGAL PRODUCTIONS, SA (represented by CURADO);

7.    CINEPICTURE PORTUGAL STUDIOS, SA (represented by CURADO);

8.    SPRING CLOCK, CONSULTING FOR BUSINESS AND MANAGEMENT, UNIPESSOAL, LDA (represented by MARREIROS);

9.    SIMPLIRADAR, LDA (represented by BARROS); and

10.   GREEN TRACE ARCHITECTURE, LDA (represented by BARROS)

According to Portuguese authorities, between 2009 and 2012, defendants CARITO, CURADO, and others entered into several contracts to promote the making of movies in Portugal under the project, "Cidade do Cinema" (Cinema City).   Portuguese authorities allege that the defendants misled investors, and others, into investing over a million euros in the project aimed to develop Portimão, Portugal, into a movie-making city, similar to Hollywood, California or Cannes, France.

C.   **ASSISTANCE REQUESTED**

With respect to the Central District of California, Portuguese authorities need to obtain the trial testimonies of the following witnesses by video-teleconference:[2]

1.   Carlos De Mattos (work address in Westlake Village, California);

2.   Thomas Vitale Ottaviano, also known as "Matt Cimber" (residential address in Thousand Oaks, California);

3.   Lynn Fero (work address in Santa Monica, California);

4.   Larry Sanitsky (work address in Los Angeles, California);

5.   Janet Tsai Dargan (residential address in Manhattan Beach, California); and

6.   Jack Gilardi (work address in Los Angeles, California).

Applicant United States of America asks that Assistant United States Attorney John J. Lulejian be empowered to issue compulsory process to render that assistance as a Commissioner of this Court.

**II.   DISCUSSION**

    A.   **THE ORDER SOUGHT IS APPROPRIATE TO ENABLE THE UNITED STATES TO FULFILL ITS TREATY OBLIGATIONS**

        1.   **The Treaty**

The United States is seeking an order appointing a Commissioner to execute the Request from Portugal. A treaty constitutes the law of the land. See U.S. Const. Art. VI. The provisions of a treaty stand on equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924),

---

[2] Prior to trial, the Federal Bureau of Investigation assisted Portuguese authorities by taking statements from each of these witnesses.

3

1  amended, 44 S. Ct. 634 (1924); <u>United States v. Schooner Peggy</u>, 5

2  U.S. (1 Cranch) 103.   To the extent that self-executing provisions of

3  a treaty are inconsistent with a preexisting statutory provision, the

4  treaty supersedes the statute.   <u>Zschernig v. Miller,</u> 389 U.S. 429,

5  440-441 (1968); <u>In re Premises Located at 840 140th Ave. NE,</u>

6  <u>Bellevue, Wash.</u>, 634 F.3d 557, 568 (9th Cir. 2011); <u>In re Erato</u>, 2

7  F.3d 11, 15 (2nd Cir. 1993).   The Treaty obligates the United States

8  and Portugal to provide assistance with respect to criminal activity,

9  including money laundering.   See Ex. 1, Treaty, ¶ 1(a)(iii).   See

10 <u>also</u> <u>In re Commissioner's Subpoenas</u>, 325 F.3d 1287, 1290 (11th Cir.

11 2003).   Each party contemplated that it would provide the other with

12 assistance generally comparable to that which is available to its own

13 law enforcement authorities, which assistance includes taking

14 testimony or statements of persons and providing documents and other

15 evidence.   See Ex. 1, Treaty, Annex, Arts. 1, 3.   <u>See also</u> <u>Barr v. U.</u>

16 <u>S. Dep't of Justice</u>, 645 F. Supp. 235, 237 (E.D.N.Y. 1986), <u>aff'd</u>,

17 819 F.2d 25 (2d Cir. 1987).   The Treaty specifically contemplates the

18 "use of video transmission technology . . . for taking testimony in a

19 proceeding for which mutual legal assistance is available of a

20 witness or expert located in a requested State."   Ex. 1, Treaty,

21 Annex, Art. 3.

22     The Treaty further provides that,

23     The United States of America shall provide assistance with

24     respect to <u>money laundering</u> and terrorist activity

25     punishable under the laws of both the requesting and

26     requested States, and with respect to such other criminal

27     activity as the United States of America may notify the

28     Portuguese Republic.

4

1  Ex. 1, Treaty, ¶ 1(a)(iii) (emphasis added). The conduct described

2  in the Request constitutes an offense under the laws of the

3  United States. See id.

4          **2.  Statutory Authority**

5      The Treaty is designed to be self-executing and requires no

6  implementing legislation. See In re Premises Located at 840 140th

7  Ave. NE, Bellevue, Wash., 634 F.3d at 568. However, because the

8  procedural provisions in many treaties are minimal, in the past,

9  federal courts routinely utilized procedures authorized by 28 U.S.C.

10  § 1782 (the "commissioner" process) to execute treaty requests from

11  foreign authorities. Id. Substantive federal law regarding

12  searches, seizures, and other compulsory processes further grounded

13  the execution of such assistance requests.

14      On October 19, 2009, the President signed the Foreign Evidence

15  Request Efficiency Act of 2009, Pub. Law No. 111-79, 123 Stat. 2086,

16  which enacted 18 U.S.C. § 3512. Section 3512 explicitly authorizes a

17  federal court to:

18          issue such orders as may be necessary to execute a request

19          from a foreign authority for assistance in the

20          investigation or prosecution of criminal offenses, or in

21          proceedings related to the prosecution of criminal

22          offenses, including proceedings regarding forfeiture,

23          sentencing, and restitution.

24  Section 3512 directly empowers federal courts to execute such

25  requests and separately codifies under Title 18 the longstanding

26  practice and procedures employed by the United States and the federal

27  courts to execute requests by foreign authorities for assistance to

28  the fullest extent possible under United States law. Congress

1  enacted Section 3512 to make it "easier for the United States to
2  respond to these requests by allowing them to be centralized and by
3  putting the process for handling them within a clear statutory
4  scheme."  155 Cong. Rec. S6807-01 (2009) (Statement of Sen.
5  Whitehouse).

6      **B.**   **EXECUTION OF FOREIGN REQUESTS FOR ASSISTANCE UNDER THE**
7           **TREATY AND SECTION 3512**

8       **1.**   **Authorization of the Application to this Court**

9  Section 3512 provides,

10     Upon application, duly authorized by an appropriate
11     official of the Department of Justice, of an Attorney for
12     the Government, a Federal judge may issue such orders as
13     may be necessary to execute a request from a foreign
14     authority for assistance in the investigation and
15     prosecution of criminal offenses, or in proceedings related
16     to the prosecution of criminal offenses, including
17     proceedings regarding forfeiture, sentencing and
18     restitution.

19  For purposes of Section 3512, an application is "duly authorized by
20  an appropriate official of the Department of Justice" when the Office
21  of International Affairs of the Department of Justice's Criminal
22  Division has reviewed and authorized the request and is executing the
23  request itself or has delegated the execution to another attorney for
24  the government.  Because of the facts and circumstances set forth in
25  the Request, Section 3512(c) authorizes filing the instant
26  application in the Central District of California.[3]  Accordingly, the

27  _____

28     [3] 18 U.S.C. § 3512 provides, in relevant part:

1  Request has been referred to this district for execution.

2        **2.   Foreign Authority Seeking Assistance Within Section**

3        **3512 and the Treaty**

4     As to the "foreign authority" making the Request, Section

5  3512(h) provides,

6      The term "foreign authority" means a foreign judicial

7      authority, a foreign authority responsible for the

8      investigation or prosecution of criminal offenses or for

9      proceedings related to the prosecution of criminal

10      offenses, or an authority designated as a competent

11      authority or central authority for the purpose of making

12      requests for assistance pursuant to an agreement or treaty

13      with the United States regarding assistance in criminal

14      matters.

15      In this matter the General Prosecutor is the designate Central

16

17

18      (c) Filing of requests.-- Except as provided under
    subsection (d), an application for execution of a request
    from a foreign authority under this section may be filed--

19

20          (1) in the district in which a person who may be required
        to appear resides or is located or in which the documents
        or things to be produced are located;

21          (2) in cases in which the request seeks the appearance of
        persons or production of documents or things that may be

22          located in multiple districts, in any one of the districts
        in which such a person, documents, or things may be

23          located; or
        (3) in any case, the district in which a related Federal

24          criminal investigation or prosecution is being conducted,
        or in the District of Columbia.

25      (d) Search warrant limitation. -- An application for

26      execution of a request for a search warrant from a foreign
    authority under this section, other than an application for

27      a warrant issued as provided under section 2703 of this
    title, shall be filed in the district in which the place or

28      person to be searched is located.

1  Authority in Portugal for requests made pursuant to the Treaty.
2  Ex. 1, Treaty, ¶ 1(a)(ii).

3  As evidenced by the Request itself and confirmed in the
4  authorization process and again by the undersigned, consistent with
5  Section 3512(a)(1), the foreign authority seeks assistance in the
6  investigation or prosecution of criminal offenses or in proceedings
7  related to the prosecution of criminal offenses.

8  **3.  Authority of the Federal Courts Under Section 3512**

9  When enacting Section 3512, Congress intended that federal
10  courts facilitate to the fullest extent possible the execution of
11  requests by foreign authorities for assistance in criminal matters
12  and endeavored to streamline and expedite the execution of such
13  requests.  Section 3512 authorizes federal courts to issue "such
14  orders as may be necessary to execute a request" and specifically
15  includes:  orders for search warrants pursuant to Federal Rule of
16  Criminal Procedure 41; orders for stored wire or electronic
17  communications and related evidence under 18 U.S.C. § 2703; orders
18  for pen registers and trap and trace devices under 18 U.S.C. § 3123;
19  orders for the provision of testimony or other statements, or the
20  production of documents or other things, or both; and orders
21  appointing "a person" to direct the taking of testimony/statements or
22  the production of documents or other things, or both.  See 18 U.S.C.
23  § 3512(a)(1), (2).

24  The assistance requested by Portugal pursuant to the Treaty by
25  the Central Criminal Section of Portimão – Judge 3 – Judicial Court
26  of the County of Faro in the instant Request falls squarely within
27  that contemplated by both the Treaty and Section 3512.

28

**C.   APPOINTMENT OF A PERSON AS COMMISSIONER TO COLLECT EVIDENCE**

**1.   Statutory Authorization**

Section 3512(b) provides that a federal judge may "issue an order appointing a person to direct the taking of testimony or statements or of the production of documents or other things, or both."  The statute further authorizes the person appointed to issue orders requiring the appearance of a person, or the production of documents or other things, or both; administer any necessary oath; and take testimony or statements and receive documents or other things.  In keeping with past practice under 28 U.S.C. § 1782, a federal court may appoint an attorney for the government, typically a federal prosecutor, as "commissioner."  However, Section 3512 does not place limits on whom "a person" might be, permitting the court to commission a foreign authority together with an attorney for the government.  See, e.g., In re Letter of Request from the Supreme Court of Hong Kong, 138 F.R.D. 27, 29 (S.D.N.Y. 1991).  "Since the power of the commissioner comes from his appointment, any person who seems appropriate to the court may be appointed commissioner."  In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993).

**2.   Procedures for Evidence Collection**

Section 3512(a) specifically empowers a federal judge to issue "such orders as may be necessary" to execute the request.  This authorization encompasses orders specifying the procedures to be used to collect particular evidence, including procedures requested by the foreign authority to facilitate its later use of the evidence.  In executing a request made pursuant to a treaty, a court has the obligation to prescribe effective and expeditious procedures designed

to promote the purpose of the treaty.  See In re Commissioner's Subpoenas, 325 F.3d at 1305.  Nothing in Section 3512 suggests any limitation on a court's power to exercise "complete discretion in prescribing the procedure to be followed," as was available under 28 U.S.C. § 1782.  In re Letter of Request from the Crown Prosecution Serv. of the U.K., 870 F.2d 686, 693 (D.C. Cir. 1989), (quoting S. Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3789. See White v. National Football League, 41 F.3d 402, 409 (8th Cir. 1994) (a court may issue whatever process it deems necessary to facilitate disposition of a matter before it); Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district.").

### a.   Procedures Authorized by Other Statutes

In addition, Section 3512 references specific federal laws for obtaining certain evidence and, by doing so, adopts any statutorily mandated procedures in relation to obtaining orders for search warrants; orders for contents of stored wire or electronic communications or for records related thereto; and orders for a pen register or a trap and trace device.

### b.   Orders by the Person Appointed; Commissioner Subpoenas

Section 3512 authorizes the "person" appointed (here, and in past practice under 28 U.S.C. § 1782, the "commissioner") to issue orders "requiring the appearance of a person, or the production of documents or other things or both."

The commissioner may issue a "commissioner's subpoena," to obtain the requested evidence.  See In re Commissioner's Subpoenas, 325 F.3d at 1291 (incorporating in pertinent part a district court's

10

1  order directing use of commissioner's subpoenas); In re Erato, 2 F.3d

2  at 13-14 (same). Section 3512 expressly authorizes the service and

3  enforcement of such orders, or commissioner's subpoenas, anywhere in

4  the United States (i.e., coextensive with the service of subpoenas in

5  U.S. criminal investigations and prosecutions).

           c.   **Notice of Evidence Taking**

7       As an initial matter, this application is being made ex parte,

8  consistent with the practice of the United States in its domestic

9  criminal matters and its prior practice on behalf of foreign

10  authorities under 28 U.S.C. § 1782. In re Letter of Request from the

11  Crown Prosecution Serv. of the U.K., 870 F.2d at 688; In re Letters

12  Rogatory from the Tokyo Dist., Tokyo, Japan, 539 F.2d 1216, 1219 (9th

13  Cir. 1976). The Treaty itself contemplates the need for

14  confidentiality with respect to all aspects of the execution of

15  requests. See Ex. 1, Treaty, Annex. Art. 7. In this case, Portugal

16  has not requested that the United States treat its request and the

17  execution of its request as confidential.

18      Section 3512 authorizes use of compulsory process in the

19  execution of treaty requests comparable or similar to that used in

20  domestic criminal investigations or prosecutions. Because subpoenas

21  utilized in U.S. criminal proceedings (i.e., grand jury and criminal

22  trial subpoenas) are issued without notice to any party other than

23  the recipients (i.e., no notice to targets or defendants), orders and

24  commissioner's subpoenas issued in execution of treaty requests

25  pursuant to Section 3512 and the applicable treaty likewise should

26  require no notice other than to the recipients. In the absence of a

27  specific request to provide notice, a district court and United

28  States authorities can assume that a requesting foreign authority has

                                    11

provided such notice as the foreign law requires, or that foreign law does not require notice and the requesting foreign authority does not consider notice to be necessary or useful.  Accordingly, a federal district court should authorize a commissioner to collect the evidence requested without notice to any party other than the recipient of the commissioner's subpoena except to the extent that a request asks for specific notice procedures.

### d.   Right to Financial Privacy Act

The Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., does not apply to execution of foreign legal assistance requests. Young v. U.S. Dep't. of Justice, 882 F.2d 633, 639 (2d Cir. 1989); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993).  Consequently, to the extent that execution of a request entails production of bank or financial records, notice provisions of the Act do not apply, and the commissioner need not give, nor arrange for the custodian of records to give, notice to an account holder.[4]

## III. CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court issue an order in the form lodged separately herewith appointing Assistant United States Attorney John J. Lulejian as a Commissioner to execute portions of the Request, and authorizing said Commissioner to take such actions as are necessary to comply

---

[4] The Act itself applies only to accounts maintained in a person's name and not to corporate, perhaps even partnership, accounts.  United States v. Daccarett, 6 F.3d 37, 50-52 (2d Cir. 1993).

with the Request, including the issuance of compulsory process in the form of Commissioner's orders or subpoenas, the administration of oaths to witnesses, and the taking of sworn testimony.

# EXHIBIT 1

**Instrument between the United States of America and the Portuguese Republic
as contemplated by Article 3(3) of the Agreement on Mutual Legal Assistance
between
the United States of America and the European Union signed 25 June 2003**

1.　　As contemplated by Article 3(3) of the Agreement on Mutual Legal Assistance between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.-EU Mutual Legal Assistance Agreement"), the Governments of the United States of America and of the Portuguese Republic acknowledge that, in accordance with the provisions of this Instrument, the U.S.-EU Mutual Legal Assistance Agreement is applied between them under the following terms:

(a)　(i) Article 4 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 1 of the Annex to this Instrument shall govern the identification of financial accounts and transactions;

(ii) Pursuant to Article 4(3) of the U.S.-EU Mutual Legal Assistance Agreement, requests for assistance under this Article shall be transmitted between, for the Portuguese Republic the Procuradoria Geral da República, and for the United States of America the attaché responsible for Portugal of the:

- U.S. Department of Justice, Drug Enforcement Administration, with respect to matters within its jurisdiction;
- U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement, with respect to matters within its jurisdiction;
- U.S. Department of Justice, Federal Bureau of Investigation, with respect to all other matters.

(iii) Pursuant to Article 4(4) of the U.S.-EU Mutual Legal Assistance Agreement, the Portuguese Republic shall provide assistance with respect to organized crime, money laundering, drug trafficking, and terrorist activity, punishable under the laws of both the requesting and requested States, and with respect to such other criminal activity as the Portuguese Republic may notify the United States of America. The United States of America shall provide assistance with respect to money laundering and terrorist activity punishable under the laws of both the requesting and requested States, and with respect to such other criminal activity as the United States of America may notify the Portuguese Republic.

(b)　Article 5 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 2 of the Annex to this Instrument shall govern the formation and activities of joint investigative teams;

(c)　Article 6 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 3 of the Annex to this Instrument shall govern the taking of testimony of a person located in the requested State by use of video transmission technology between the requesting and requested States;

(d)　Article 7 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 4 of the Annex to this Instrument shall govern the use of expedited means of communication;

(e)  (i) Article 8 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 5 of the Annex to this Instrument shall govern the providing of mutual legal assistance to the administrative authorities concerned;

(ii) Pursuant to Article 8(2)(b) of the U.S.-EU Mutual Legal Assistance Agreement, requests for assistance under this Article shall be transmitted between the United States Department of Justice and the Procuradoria Geral da República, or between such other authorities as may be agreed by the Department of Justice and Procuradoria Geral da República.

(f)  Article 9 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 6 of the Annex to this Instrument shall govern the limitation on use of information or evidence provided to the requesting State, and governing the conditioning or refusal of assistance on data protection grounds;

(g)  Article 10 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 7 of the Annex to this Instrument shall govern the circumstances under which a requesting State may seek the confidentiality of its request;

(h)  Article 13 of the U.S.-EU Mutual Legal Assistance Agreement as set forth in Article 8 of the Annex to this Instrument shall govern the invocation by the requested State of grounds for refusal.

2.  The Annex reflects the provisions of the U.S.-EU Mutual Legal Assistance Agreement that shall apply between the United States of America and the Portuguese Republic upon entry into force of this Instrument.

3.  In accordance with Article 12 of the U.S.-EU Mutual Legal Assistance Agreement, this Instrument shall apply to offenses committed before as well as after it enters into force.

4.  This Instrument shall not apply to requests made prior to its entry into force; except that, in accordance with Article 12 of the U.S.-EU Mutual Legal Assistance Agreement, Articles 3 and 4 of the Annex shall be applicable to requests made prior to such entry into force.

5. (a)  This Instrument shall be subject to completion by the United States of America and the Portuguese Republic of their respective applicable internal procedures for entry into force. The Governments of the United States of America and of the Portuguese Republic shall thereupon exchange instruments indicating that such measures have been completed. This Instrument shall enter into force on the date of entry into force of the U.S.-EU Mutual Legal Assistance Agreement.

(b)  In the event of termination of the U.S.-EU Mutual Legal Assistance Agreement, this Instrument shall be terminated.

2

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Instrument.

DONE at Washington, in duplicate, this 14ᵗʰ day of July 2005, in the English and Portuguese languages, both texts being equally authentic.

FOR THE UNITED STATES OF AMERICA:

FOR THE PORTUGUESE REPUBLIC:

3

ANNEX

Article 1
Identification of bank information

1 (a)    Upon request of the requesting State,  the requested State shall, in accordance
with the terms of this Article, promptly ascertain if the banks located in its
territory possess information on whether an identified natural or legal person
suspected of or charged with a criminal offense is the holder of a bank account
or accounts. The requested State shall promptly communicate the results of its
enquiries to the requesting State.

(b)    The actions described in subparagraph (a) may also be taken for the purpose of
identifying:

    (i)    information regarding natural or legal persons convicted of or otherwise
involved in a criminal offense;
    (ii)    information in the possession of non-bank financial institutions; or
    (iii)    financial transactions unrelated to accounts.

2.    A request for information described in paragraph 1 of this Article shall include:

(a)    the identity of the natural or legal person relevant to locating such accounts or
transactions;

(b)    sufficient information to enable the competent authority of the requested State
to:

    (i)    reasonably suspect that the natural or legal person concerned has
engaged in a criminal offense and that banks or non-bank financial
institutions in the territory of the requested State may have the
information requested; and
    (ii)    conclude that the information sought relates to the criminal investigation
or proceeding; and

(c)    to the extent possible, information concerning which bank or non-bank financial
institution may be involved, and other information the availability of which may
aid in reducing the breadth of the enquiry.

3.    Unless subsequently modified by exchange of diplomatic notes between the
European Union and the United States of America, requests for assistance under
this Article shall be transmitted between:

(a)    for the Portuguese Republic, the Procuradoria Geral da República, and
(b)    For the United States of America, the attaché responsible for Portugal of the:

    (i) U.S. Department of Justice, Drug Enforcement Administration, with
respect to matters within its jurisdiction;

4

> (ii) U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement, with respect to matters within its jurisdiction;
>
> (iii) U.S. Department of Justice, Federal Bureau of Investigation, with respect to all other matters.

4. The Portuguese Republic shall provide assistance under this Article with respect to organized crime, money laundering, drug trafficking, and terrorist activity, punishable under the laws of both the requesting and requested States, and with respect to such other criminal activity as the Portuguese Republic may notify the United States of America.   The United States of America shall provide assistance under this Article with respect to money laundering and terrorist activity punishable under the laws of both the requesting and requested States, and with respect to such other criminal activity as the United States of America may notify the Portuguese Republic.

5. Assistance may not be refused under this Article on grounds of bank secrecy.

6. The requested State shall respond to a request for production of the records concerning the accounts or transactions identified pursuant to this Article in accordance with the requirements of its domestic law.

### Article 2
### Joint investigative teams

1. Joint investigative teams may be established and operated in the respective territories of the United States of America and Portugal for the purpose of facilitating criminal investigations or prosecutions involving the United States of America and one or more Member States of the European Union where deemed appropriate by the United States of America and the Portuguese Republic.

2. The procedures under which the team is to operate, such as its composition, duration, location, organization, functions, purpose, and terms of participation of team members of a State in investigative activities taking place in another State's territory shall be as agreed between the competent authorities responsible for the investigation or prosecution of criminal offenses, as determined by the respective States concerned.

3. The competent authorities determined by the respective States concerned shall communicate directly for the purposes of the establishment and operation of such team except that where the exceptional complexity, broad scope, or other circumstances involved are deemed to require more central coordination as to some or all aspects, the States may agree upon other appropriate channels of communications to that end.

4. Where the joint investigative team needs investigative measures to be taken in one of the States setting up the team, a member of the team of that State may request its own competent authorities to take those measures without the other States having to submit a request for mutual legal assistance. The required legal standard for obtaining the measure in that State shall be the standard applicable to its domestic investigative activities.

5

### Article 3
### Video conferencing

1.  The use of video transmission technology shall be available between the United States of America and the Portuguese Republic for taking testimony in a proceeding for which mutual legal assistance is available of a witness or expert located in a requested State. To the extent not specifically set forth in this Article, the modalities governing such procedure shall be as otherwise provided under the law of the requested State.

2.  Unless otherwise agreed by the requesting and requested States, the requesting State shall bear the costs associated with establishing and servicing the video transmission. Other costs arising in the course of providing assistance (including costs associated with travel of participants in the requested State) shall be borne as agreed upon by the requesting and requested States.

3.  The requesting and requested States may consult in order to facilitate resolution of legal, technical or logistical issues that may arise in the execution of the request.

4.  Without prejudice to any jurisdiction under the law of the requesting State, making an intentionally false statement or other misconduct of the witness or expert during the course of the video conference shall be punishable in the requested State in the same manner as if it had been committed in the course of its domestic proceedings.

5.  This Article is without prejudice to the use of other means for obtaining of testimony in the requested State available under applicable treaty or law.

6.  The requested State may permit the use of video conferencing technology for purposes other than those described in paragraph 1 of this Article, including for purposes of identification of persons or objects, or taking of investigative statements.

### Article 4
### Expedited transmission of requests

Requests for mutual legal assistance, and communications related thereto, may be made by expedited means of communications, including fax or e-mail, with formal confirmation to follow where required by the requested State. The requested State may respond to the request by any such expedited means of communication.

### Article 5
### Mutual legal assistance to administrative authorities

1.  Mutual legal assistance shall also be afforded to a national administrative authority, investigating conduct with a view to a criminal prosecution of the conduct, or referral of the conduct to criminal investigation or prosecution

6

authorities, pursuant to its specific administrative or regulatory authority to undertake such investigation. Mutual legal assistance may also be afforded to other administrative authorities under such circumstances. Assistance shall not be available for matters in which the administrative authority anticipates that no prosecution or referral, as applicable, will take place.

2.  Requests for assistance under this article shall be transmitted between the United States Department of Justice and the Procuradoria Geral da República, or between such other authorities as may be agreed by the Department of Justice and Procuradoria Geral da República.

### Article 6
#### Limitations on use to protect personal and other data

1.  The requesting State may use any evidence or information obtained from the requested State:

(a)  for the purpose of its criminal investigations and proceedings;
(b)  for preventing an immediate and serious threat to its public security;
(c)  in its non-criminal judicial or administrative proceedings directly related to investigations or proceedings:
     (i)    set forth in subparagraph (a); or
     (ii)   for which mutual legal assistance was rendered under Article 5 of this Annex;
(d)  for any other purpose, if the information or evidence has been made public within the framework of proceedings for which they were transmitted, or in any of the situations described in subparagraphs (a), (b) and (c); and
(e)  for any other purpose, only with the prior consent of the requested State.

2. (a)  This Article shall not prejudice the ability of the requested State to impose additional conditions in a particular case where the particular request for assistance could not be complied with in the absence of such conditions. Where additional conditions have been imposed in accordance with this subparagraph, the requested State may require the requesting State to give information on the use made of the evidence or information.

(b)  Generic restrictions with respect to the legal standards of the requesting State for processing personal data may not be imposed by the requested State as a condition under subparagraph (a) to providing evidence or information.

3.  Where, following disclosure to the requesting State, the requested State becomes aware of circumstances that may cause it to seek an additional condition in a particular case, the requested State may consult with the requesting State to determine the extent to which the evidence and information can be protected.

### Article 7
#### Requesting State's request for confidentiality

The requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the requesting State. If the request

cannot be executed without breaching the requested confidentiality, the central authority of the requested State (in the case of the United States of America, the United States Department of Justice, and in the case of the Portuguese Republic, the Procuradoria Geral da República) shall so inform the requesting State, which shall then determine whether the request should nevertheless be executed.

### Article 8
### Refusal of assistance

Subject to Article 1(5) and 6(2)(b) of this Annex, the provisions of this Annex are without prejudice to the invocation by the requested State of grounds for refusal of assistance available pursuant to its applicable legal principles, including where execution of the request would prejudice its sovereignty, security, ordre public or other essential interests.

8

**Instrumento entre os Estados Unidos da América e a República Portuguesa conforme nº 3 do artigo 3º do Acordo entre a União Europeia e o Estados Unidos da América sobre auxílio Judiciário Mútuo assinado a 25 de Junho de 2003**

1.      Em conformidade com o disposto no nº 3 do artigo 3º do Acordo entre a União Europeia e os Estados Unidos da América sobre Auxílio Judiciário Mútuo assinado a 25 de Junho de 2003 (doravante "Acordo UE-EUA sobre Auxílio Judiciário Mútuo"), os Estados Unidos da América e a República Portuguesa reconhecem que, de acordo com as disposições deste Instrumento, o Acordo UE-EUA sobre Auxílio Judiciário Mútuo, se aplica entre eles, de acordo com os seguintes termos:

(a) (i) O artigo 4º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 1º do Anexo a este Instrumento, regula a identificação de contas e transacções financeiras;

        (ii) Nos termos do nº 3 do artigo 4 do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, os pedidos de auxílio ao abrigo deste artigo devem ser transmitidos entre, relativamente à República Portuguesa, a Procuradoria Geral da República, e relativamente aos Estados Unidos da América, o *Attaché* responsável para Portugal do
              - Departamento de Justiça dos Estados Unidos, Departamento e Investigação e Tráfego de Estupefacientes, nas matérias da sua competência;
              - Departamento de Assuntos Internos e Segurança, Departamento de Imigração e Alfandegas, nas matérias da sua competência;
              - Departamento de Justiça dos Estados Unidos, Departamento Federal de Investigação, nas restantes matérias.

        (iii) Nos termos do nº 4 do artigo 4º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo a República Portuguesa deve prestar auxílio, relativamente a actividades de crime organizado, branqueamento de capitais, tráfico de droga e terrorismo, puníveis de acordo com as lei de ambos os Estados requerente e requerido e relativamente a quaisquer outras actividades criminosas que a República Portuguesa notifique os Estados Unidos da América;
Os Estados Unidos da América devem prestar auxílio relativamente a actividades de branqueamento de capitais e terrorismo, puníveis de acordo com as lei de ambos os Estados requerente e requerido, e relativamente a quaisquer outras actividades criminosas de que os Estados Unidos da América notifiquem a República Portuguesa.

(b) O artigo 5º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 2º do Anexo a este Instrumento, regula a formação e actividades de equipas de investigação conjuntas;

(c) O artigo 6º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 3º do Anexo a este Instrumento, regula a prestação de testemunho de uma pessoa localizada no Estado requerido através da utilização da tecnologia da transmissão por vídeo entre o Estado requerente e o Estado requerido;

1

(d) O artigo 7º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 4º do Anexo a este Instrumento, regula o uso de meios expeditos de comunicação;

(e) (i) O artigo 8º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 5º do Anexo a este Instrumento, regula a prestação de auxílio judiciário mútuo às autoridades administrativas interessadas;

(ii) Nos termos da alínea b) do nº 2 do artigo 8 do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, os pedidos de auxílio judiciário apresentados ao abrigo do presente artigo, devem ser transmitidos entre a Procuradoria Geral da República e o Departamento de Justiça dos Estados Unidos, ou entre outras autoridades que a Procuradoria Geral da República e o Departamento de Justiça dos Estados Unidos tenham designado de comum acordo.

(f) O artigo 9º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 6º do Anexo a este Instrumento, regula a limitação do uso de informações ou provas fornecidas ao Estado requerente e a prestação condicional ou a recusa de prestação de auxílio por motivos relacionados com a protecção de dados;

(g) O artigo 10º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 7º do Anexo a este Instrumento, regula as circunstâncias em que o Estado requerente pode solicitar a confidencialidade do pedido;

(h) O artigo 13º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, tal como previsto no artigo 8º do Anexo a este Instrumento, regula a invocação pelo Estado requerido de motivos de recusa.

2. O Anexo reflecte as disposições do Acordo UE-EUA sobre Auxílio Judiciário Mútuo aplicáveis entre a República Portuguesa e os Estados Unidos da América após a entrada em vigor deste Instrumento.

3. Nos termos do artigo 12º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo este Instrumento é aplicável às infracções cometidas antes e depois da sua entrada em vigor.

4. Este Instrumento não é aplicável aos pedidos de auxílio apresentados antes da sua entrada em vigor; todavia, nos termos do artigo 12º do Acordo UE-EUA sobre Auxílio Judiciário Mútuo, os artigos 3º e 4º do Anexo são aplicáveis aos pedidos de auxílio apresentados antes dessa entrada em vigor.

5. (a) Este Instrumento está sujeito ao cumprimento pela República Portuguesa e pelo Estados Unidos da América das respectivas formalidades internas aplicáveis para a sua entrada em vigor. Os Governos da República Portuguesa e dos Estados Unidos da América em seguida trocarão instrumentos declarando que tal procedimento foi concluído. Este Instrumento entra em vigor na data da entrada em vigor do Acordo UE-EUA sobre Auxílio Judiciário Mútuo.

(b) No caso de cessação do Acordo UE-EUA sobre Auxílio Judiciário Mútuo este Instrumento cessa.

2

EM FÉ DO QUE, os abaixo assinados, devidamente autorizados pelos respectivos Governos, assinaram este Instrumento.

Feito em Washington DC, no 14º dia do mês de Julho do ano de 2005, em dois exemplares, nas línguas Portuguesa e Inglesa, fazendo fé qualquer dos textos.


Pelos Estados Unidos da América                    Pela   República   Portuguesa


3

## ANEXO

### Artigo 1º
### Identificação de Informação bancária

1.      a) A pedido do Estado requerente, o Estado requerido deve, nos termos do presente artigo, determinar rapidamente se os bancos localizados no seu território possuem informações sobre a titularidade de uma ou mais contas bancárias por uma determinada pessoa singular ou colectiva identificada, suspeita ou acusada da prática de uma infracção penal. O Estado requerido deve comunicar rapidamente ao Estado requerente os resultados das averiguações efectuadas.

b) As medidas a que se refere a alínea a) também podem ser tomadas para efeitos de identificação de:
      i) informações relativas a pessoas singulares ou colectivas condenadas ou de outro modo envolvidas na prática de uma infracção penal,
      ii) informações na posse de instituições financeiras não bancárias, ou
      iii) transacções financeiras não relacionadas com contas bancárias.

2. Os pedidos de informação a que se refere o n.º 1 devem conter:
a) A identidade da pessoa singular ou colectiva relevante para a localização das referidas contas ou transacções; e
   b) Elementos bastantes para permitir à autoridade competente do Estado requerido:
   i) ter motivos fundados para suspeitar que a pessoa singular ou colectiva em questão está envolvida na prática de uma infracção penal`e que os bancos ou as instituições financeiras não bancárias no território do Estado requerido podem possuir a informação solicitada; e
   ii) concluir que as informações pretendidas se relacionam com a investigação ou o processo penal;
c) Na medida do possível, informações sobre os bancos ou instituições financeiras não bancárias eventualmente envolvidos, bem como outras informações cuja disponibilidade possa contribuir para circunscrever o âmbito das averiguações.

3. A não ser que subsequentemente modificado por troca de notas diplomáticas entre a União Europeia e os Estados Unidos da América, os pedidos de auxílio apresentados nos termos do presente artigo devem ser transmitidos entre:
a) relativamente à República Portuguesa, a Procuradoria Geral da República;
b) relativamente aos Estados Unidos da América, o *Attaché* responsável para Portugal do:
(i)      Departamento de Justiça dos Estados Unidos, Departamento e Investigação e Tráfego de Estupefacientes, nas matérias da sua competência;
(ii)     Departamento de Assuntos Internos e Segurança, Departamento de Imigração e Alfandegas, nas matérias da sua competência;
(iii)    Departamento de Justiça dos Estados Unidos, Departamento Federal de Investigação, nas restantes matérias.

4

4. A República Portuguesa deve prestar auxílio, nos termos deste artigo, relativamente a actividades de crime organizado, branqueamento de capitais, tráfico de droga e terrorismo, puníveis de acordo com as lei de ambos os Estados requerente e requerido, e relativamente a quaisquer outras actividades criminosas que a República Portuguesa notifique os Estados Unidos da América;

Os Estados Unidos da América devem prestar auxílio, nos termos deste artigo, relativamente a actividades de branqueamento de capitais e terrorismo, puníveis de acordo com as lei de ambos os Estados requerente e requerido, e relativamente a quaisquer outras actividades criminosas de que os Estados Unidos da América notifiquem a República Portuguesa.

5.      O auxílio nos termos do presente artigo não pode ser recusado com fundamento no sigilo bancário.

6.      O Estado requerido deve responder a um pedido de apresentação dos registos relativos às contas ou transacções identificadas, nos termos deste artigo, em conformidade com os requisitos da sua lei interna.

### Artigo 2
### Equipas de investigação conjuntas

1. Podem ser criadas e funcionar nos territórios respectivos de Portugal e dos Estados Unidos da América equipas de investigação conjuntas, a fim de facilitar as investigações ou os procedimentos penais que envolvam um ou mais Estados-Membros da União Europeia e os Estados Unidos da América, quando a República Portuguesa e os Estados Unidos da América o considerem conveniente.

2.      As disposições a que deve obedecer o funcionamento das equipas, designadamente em matéria de composição, duração, localização, organização, funções, fins e termos da participação de membros da equipa de um Estado nas actividades de investigação que têm lugar no território de outro Estado, devem ser acordadas entre as autoridades competentes responsáveis pela investigação das infracções penais e pela promoção da acção penal, tal como determinadas pelos respectivos Estados interessados.

3.      As autoridades competentes determinadas pelos respectivos Estados interessados devem comunicar directamente entre si para fins de criação e funcionamento dessas equipas, excepto quando se considere que a excepcional complexidade ou a grande amplitude do âmbito das investigações ou outras circunstâncias exigem uma maior coordenação a nível central em relação a parte ou à totalidade dos aspectos das investigações, podendo neste caso os Estados acordar em utilizar outros canais de comunicação para esse fim.

5

4.      Quando a equipa de investigação conjunta tiver necessidade de que sejam tomadas medidas de investigação num dos Estados que participam na criação da equipa, um membro da equipa originário desse Estado pode solicitar às suas próprias autoridades competentes que tomem essas medidas, sem que os outros Estados tenham de apresentar um pedido de auxílio judiciário mútuo. O critério legal a aplicar para a obtenção da medida nesse Estado deve ser o critério aplicável às actividades de investigação a nível nacional.

## Artigo 3
### Videoconferência

1.      A utilização de tecnologia de transmissão por vídeo deve estar disponível entre a República Portuguesa e os Estados Unidos da América para a recolha de depoimentos, no quadro de um processo no qual seja facultado auxílio judiciário mútuo, de testemunhas ou peritos situados no Estado requerido. Na medida em que o presente artigo não contenha disposições específicas a esse respeito, as regras a que deve obedecer o referido procedimento são as previstas na lei do Estado requerido.

2.      Salvo acordo em contrário entre os Estados requerente e requerido, o Estado requerente deve suportar os custos inerentes ao estabelecimento e à realização da transmissão por vídeo. Os outros custos decorrentes da prestação de auxílio (incluindo os custos inerentes às deslocações de participantes no Estado requerido) são suportados consoante o que for acordado pelos Estados requerente e requerido.

3.      Os Estados requerente e requerido podem concertar-se para facilitar a resolução das questões jurídicas, técnicas ou logísticas que possam ser suscitadas pela execução do pedido.

4.      Sem prejuízo de quaisquer competências previstas na lei do Estado requerente, a produção de declarações intencionalmente falsas ou outra conduta ilícita de testemunhas ou peritos durante a videoconferência deve ser punível no Estado requerido de forma idêntica à que ocorreria se a mesma conduta se verificasse no quadro de um processo nacional.

5.      O presente artigo não prejudica a utilização de outros meios de recolha de depoimentos no Estado requerido disponíveis nos termos de tratado ou de lei aplicável.

6.      O Estado requerido pode permitir a utilização de tecnologia de videoconferência para fins diversos dos referidos no n.º 1 deste artigo, incluindo fins de identificação de pessoas ou objectos, ou de recolha de depoimentos no quadro de investigações.

6

### Artigo 4
### Transmissão de pedidos por meios expeditos

Os pedidos de auxílio judiciário mútuo e as comunicações com eles relacionadas podem efectuar-se por meios expeditos de comunicação, incluindo o fax ou o correio electrónico, com confirmação formal subsequente nos casos em que tal seja solicitado pelo Estado requerido. O Estado requerido pode responder ao pedido por qualquer dos referidos meios expeditos de comunicação.

### Artigo 5
### Prestação de auxílio judiciário mútuo às autoridades administrativas

1. É igualmente prestado auxílio judiciário a uma autoridade administrativa que esteja a investigar determinada conduta para fins da correspondente acção penal ou para remessa do processo relativo a essa conduta às autoridades responsáveis pela investigação ou pela promoção da acção penal por força de uma autoridade específica, de natureza administrativa ou regulamentar, de que disponha para efectuar essas investigações. Pode igualmente ser prestado auxílio judiciário a outras autoridades administrativas nessas circunstâncias. Não será prestado auxílio judiciário em matérias relativamente às quais a autoridade administrativa preveja que não haverá lugar a processo penal ou à remessa de qualquer processo, consoante o caso.

2. Os pedidos de auxílio judiciário apresentados ao abrigo do presente artigo devem ser transmitidos entre a Procuradoria Geral da República e o Departamento de Justiça dos Estados Unidos, ou entre outras autoridades que a Procuradoria Geral da República e o Departamento de Justiça dos Estados Unidos tenham designado de comum acordo.

7

### Artigo 6
### Limitações de utilização para protecção de dados pessoais e outros

1. O Estado requerente pode utilizar quaisquer provas ou informações transmitidas pelo Estado requerido:
a) Para fins de investigações e processos penais;
b) Para prevenir ameaças graves e imediatas à sua segurança pública;
c) Nos seus processos judiciais ou administrativos de natureza não penal directamente relacionados com as investigações ou processos:
   i) a que se refere a alínea a), ou
   ii) para os quais foi prestado auxílio judiciário nos termos do artigo 5 deste anexo;
d) Para quaisquer outros fins, se as informações ou provas tiverem sido tornadas públicas no quadro do processo para o qual foram transmitidas, ou em qualquer das situações a que se referem as alíneas a), b) e c); e
e) Para quaisquer outros fins, apenas com o consentimento prévio do Estado requerido.

2. a) O presente artigo não prejudica a possibilidade de o Estado requerido impor condições adicionais em casos específicos, quando não seja possível atender a um determinado pedido na falta dessas condições. Quando tenham sido impostas condições adicionais ao abrigo da presente alínea, o Estado requerido pode solicitar ao Estado requerente que preste informações sobre a utilização dada às provas ou informações.
   b) O Estado requerido não pode impor limitações genéricas relativamente às normas legais do Estado requerente aplicáveis ao tratamento de dados pessoais como condição para o fornecimento de provas ou informações nos termos da alínea a).

3. Quando, após a divulgação ao Estado requerente, o Estado requerido tomar conhecimento da existência de circunstâncias que o poderão levar a solicitar a aplicação de uma condição adicional num caso particular, o Estado requerido pode consultar o Estado requerente para determinar em que medida as provas e informações poderão ser protegidas.

### Artigo 7°
### Pedido de confidencialidade do Estado requerente

O Estado requerido deve envidar todos os esforços para manter a confidencialidade de um pedido e do seu conteúdo, se essa confidencialidade for solicitada pelo Estado requerente. Se o pedido não puder ser executado sem quebra da confidencialidade solicitada, a autoridade central do Estado requerido (no caso da República Portuguesa a Procuradoria Geral da República e no caso dos Estados Unidos da América, o Departamento de Justiça dos Estados Unidos) deve informar do facto o Estado requerente, que determinará se o pedido deve ser, apesar de tudo, executado.

8

### Artigo 8
### Recusa de auxílio

Sob reserva do n.º 5 do artigo 1.º e da alínea b) do n.º 2 do artigo 6, do presente anexo, as disposições deste anexo não obstam a que o Estado requerido invoque motivos de recusa de auxílio conformes com os princípios jurídicos aplicáveis nesse Estado, nomeadamente quando a execução do pedido possa prejudicar a sua soberania, a sua segurança, a sua ordem pública ou os seus interesses fundamentais.

9